573 A.2d 525

FRANK E. WILTON AND GERALDINE L. WILTON, PLAINTIFFS, v. CYCLE TRUCKING, INC., ATLANTIC COAST EXPRESS, WILFRED A. FLEMING, HARLEYSVILLE INSURANCE CO., HARLEYSVILLE MUTUAL INSURANCE CO., AND JOHN DOE I THROUGH JOHN DOE X, DEFENDANTS.

FRANK E. WILTON AND GERALDINE L. WILTON, PLAINTIFFS, v. NEW JERSEY PROPERTY–LIABILITY GUARANTY ASSOCIATION AND JOHN DOE I THROUGH JOHN DOE X, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided November 17, 1987.

*Leonard F. Rappa,* Esq., for Plaintiffs.

*Lance A. Posner,* Esq., for Defendant Cycle Trucking, Inc. (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys).

*Richard R. Spencer, Jr.,* Esq. for Defendant New Jersey Property–Liability Guaranty Association (*Stryker, Tams & Dill,* attorneys).

SACHAR, J.S.C.

This matter is on remand from the Appellate Division with respect to whether the Guaranty Association is liable for prejudgment interest in a tort action, or whether the defendant insured is liable for said prejudgment interest.

On April 3, 1986, Midland Insurance Company was declared insolvent, resulting in a 180–day court-ordered stay of the litigation being entered on or about April 3, 1986. As a result of Midland's insolvency, the mechanism for payment of "covered claims" by the New Jersey Property–Liability Insurance Guaranty Association Act was triggered. *N.J.S.A.* 17:30A–1 et seq.

After numerous adjournments, the trial began on October 8, 1986. Although the plaintiffs' initial settlement demand was $300,000, at the time of trial it was reduced to $150,000. Defense Counsel conveyed that final demand to General Adjustment Bureau (GAB), acting as agent for the Guaranty Associa-

tion, and told GAB that "there was no defense on liability," and that the defendant's medical expert witness would not be called at trial "because his testimony would be damaging."[1] No offer of settlement was made. At noon on October 14, 1986, while the trial was ongoing, defense counsel again attempted to settle the matter by obtaining an offer from GAB's representative, but was advised that it would be a two-week process to get $75,000 or more, and that the maximum that was available was $25,000, which was of no interest to plaintiff. On October 15, 1986, a jury verdict was returned which, after being molded by deducting lost earnings PIP benefits, resulted in a net verdict for the plaintiff in the sum of $164,800, and a verdict for his wife of $12,000. On that same day, the Court entered judgment on the verdicts and on prejudgment interest in the amount of $51,912 for plaintiff, Frank Wilton, and $3,780 for his wife, Geraldine Wilton. Defense counsel was of the opinion that, considering the more than $130,000 wage claim and the exposure for pain and suffering, the verdict would be unassailable." Relying on *N.J.S.A.* 17:30A–5(d), the Guaranty Association paid the judgment without prejudgment interest.

On December 1, 1986, defendants Atlantic and Cycle filed Notices of Appeal from that part of the judgment which included prejudgment interest. On December 11, 1986, the appellants filed Amended Notices of Appeal, which simply amended the title of the action to set forth the names of all defendants in the action below. On December 18, 1986, on its own motion, the Appellate Division entered an order consolidating the two appeals for all purposes.

On February 26, 1987, the Appellate Division granted a motion to stay the appellate proceedings and granted a temporary remand to the trial court to conduct a hearing, stating in its Order:

---

[1]All quotes herein referred to from Association's Counsel's letter of October 20, 1986, contained in Defendant–Appellant, Cycle Trucking, Inc., brief submitted January 29, 1987, at Appendix Da51.3–7.

The appeal of the above entitled matter is stayed pending the hearing and consideration by and decision of the trial judge, and, if necessary the modification of the judgment appealed from based upon the outcome of such hearing. The trial judge is empowered:

a. to entertain plaintiffs' motion partially joined in by defendants, Atlantic Coast Express and Cycle Trucking, Inc., which seeks a determination as to whether the Guaranty Association or the defendants directly are responsible for payment of prejudgment interest; and/or

b. to determine whether exceptional circumstances exist which justify *R.* 4:50–1(f) relief from the operation of that portion of the judgment which assessed prejudgment interest pursuant to *R.* 4:42–11(b).

On May 14, 1987, plaintiffs filed a First Amended Complaint for declaratory judgment, joining, for the first time, New Jersey Property–Liability Insurance Guaranty Association, asking that the Court construe which of the defendants, Cycle Trucking, Inc., Atlantic Coast, or New Jersey Property–Liability Insurance Guaranty Association, should pay prejudgment interest.

At a hearing held before this Court, the corporate defendants stipulated that they were not impecunious and were financially able to pay any prejudgment interest that might be assessed against them. They further stipulated that the individual driver would be held harmless and indemnified by the corporate defendants for any prejudgment interest that may be awarded.

In 1974, the Legislature adopted the New Jersey Property–Liability Guaranty Association Act, hereinafter referred to as "Association:"

... to provide some protection to policyholders of insurance companies which become insolvent. *N.J.S.A.* 17:30A–2(a). The Act applies to all kinds of direct insurance, except for specifically enumerated types such as life insurance, accident and health insurance, etc. *N.J.S.A.* 17:30A–2(b). The Act creates a New Jersey Property–Liability Insurance Guaranty Association (Association) and requires all insurers in the State who write insurance to which the Act applies to be members of the Association as a condition of their authority to transact insurance in this State. *N.J.S.A.* 17:30A–6. The Association is empowered to assess members in amounts necessary to pay the covered claims of an insolvent insurer. *N.J.S.A.* 17:30A–8. *Railroad Roofing, etc. Co. v. Financial Fire & Cas. Co.,* 85 *N.J.* 384, 389 [427 *A.*2d 66] (1981).

The Court is called upon to construe the Act to determine whether prejudgment interest under *R.* 4:42–11(b) is a covered claim. *R.* 4:42–11(b) states:

> (b) Tort Actions. Except where provided by statute with respect to a public entity or employee, and except as otherwise provided by law, the court shall, in tort actions, including products liability actions, include in the judgment simple interest at 12% per annum on the amount of the award from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest. The contingent fee of an attorney shall not be computed on the interest so included in the judgment.

The statute as originally enacted in 1974, was based on an emergency situation involving the impending insolvency of the Professional Insurance Company of New York. Some years thereafter, *N.J.S.A.* 17:30A–5(d) was amended as part of a series of amendments (L.1979, c. 448) to specifically exclude payment of prejudgment interest. *N.J.S.A.* 17:30A–5(d) states, inter alia, "A 'covered claim' shall not include amounts for interest on unliquidated claims."

In an explanatory Memorandum issued by the Members of the Assembly Banking and Insurance Committee dated February 20, 1979, the provisions of the Assembly Bill 1114 (L.1979, c. 448), which amended *N.J.S.A.* 17:30A–5(d), the following statement appears:

> *Provision of Bill*
>
> This legislation amends the law which establishes the New Jersey Property–Liability Guaranty Association which was established to deal with administering the affairs of insolvent insurers. The amendments exclude from the purview of the act several lines of insurance, including credit insurance, mortgage guaranty insurance, mutual fund guaranty insurance, and ocean marine insurance. With the elimination of ocean marine insurance, the separate account established for that line in inland marine insurance is eliminated. The amendments provide that even though amounts due reinsurers, insurance pools, or underwriting associations are not covered claims, such claims may be filed directly with the receiver of the insolvent insurer. *Specifically excluded from the definition of "covered claims" are claims for interest on unliquidated claims, punitive damages, counsel fees for prosecuting suits for claims against the Association, and assessments or charges for the failure of the insurer to settle claims expeditiously.* (Emphasis added.)

This is in accordance with a Bill Memo of the American Insurance Association which initiated the original legislation, as well

as the amendment, entitled "Bill Memo Y 1592" to the same effect. The amendment also added a cap of $300,000 for any one claim under a liability policy. The amendments generally tightened up the coverage that would be provided under the Act.

There is no definition of interest on unliquidated claims in the Act. By the adoption of *R.* 4:42–11(b) adding prejudgment interest to unliquidated claims in tort actions, the Court intended to extend prejudgment interest to both liquidated and unliquidated claims alike, as equity dictates. "The awarding of prejudgment interest is generally a matter of judicial discretion governed by equitable principles. *Bak–A–Lum Corp. v. Alcoa Building Products,* 69 *N.J.* 123, 131, 351 *A.*2d 349 (1976). See *Rule* 4:42–11(b) (allowing prejudgment interest in tort actions)." *P.T. & L. Construction Company, Inc. v. State of New Jersey, Department of Transportation,* 108 *N.J.* 539, 531 *A.*2d 1330 (1987).

The Courts have commonly employed the term unliquidated claims when referring to prejudgment interest in tort cases. In *Busik v. Levine,* 63 *N.J.* 351, 358–359, 307 *A.*2d 571 (1973), which upheld the adoption of *R.* 4:42–11(b), the Court stated:

> We mentioned earlier the judge-made limitation that interest should not be allowed if the claim was unliquidated. The limitation apparently rested upon the view that a defendant should not be deemed in default when the amount of his liability has not been adjudged. But interest is payable on a liquidated claim when liability itself is denied, even in good faith, *Kamens v. Fortugno,* 108 *N.J.Super.* 544, 552–553 [262 *A.*2d 11] (Ch.Div.1970). The fact remains that in both situations the defendant has had the use, and the plaintiff has not, of moneys which the judgment finds was the damage plaintiff suffered. This is true whether the contested liability is for a liquidated or for an unliquidated sum. For that reason, the concept of "liquidated" sum has often been strained to find a basis for an award of interest.
>
> It is said there is now, in general, a willingness to allow interest on *unliquidated claims* as justice may dictate. 22 *Am.Jur.*2d, *Damages,* § 181, pp. 259–260. (Emphasis added.)

The Court in *Busik, supra,* also stated that in adopting prejudgment interest on unliquidated claims in tort actions, it was not intended thereby to limit interest on unliquidated claims to tort cases.

Finally the adoption of the rule does not foreclose holders of other unliquidated claims from contending the circumstances which attend their scene are so like the circumstances here involved that interest should also be allowed to them. *Busik, supra,* at 374, 307 *A.*2d 571. (Emphasis added.)

In *Ellmex Const. Co., Inc. v. Republic Ins. Co.,* 202 *N.J.Super.* 195, 211, 494 *A.*2d 339 (App.Div.1985), that dealt with the extent of property damage and coverage questions resulting from the vandalism of a house under a builder's risk policy, the Court stated:

The clearest tocsin of change is *R.* 4:42–11(b) where the Court made prejudgment interest the norm for tort claims and included that most unliquidated form of damages, claims for personal injury. Granted, there were special reasons for that change in the law but in *Busik* the Court, in justifying the new court rule, gave a clear signal that the old distinction permitting prejudgment interest only on liquidated contract claims needed reconsideration. The Court noted that the equitable reasons for an award of such *interest on unliquidated claims* were as great as the reasons for prejudgment interest on liquidated damages. (Emphasis added.)

The amended Act also excluded from coverage other claims that the Association would be obligated to pay to advance the aim of early settlement. Excluded are "... counsel fees for prosecuting suits for claims against the association, and assessments or charges for failure of such insolvent insurer to have expeditiously settled claims." *N.J.S.A.* 17:30A–5. While interest on unliquidated claims is excluded under the Act, interest on liquidated claims is not. This maintains the same dichotomy with respect to payment of interest only on liquidated claims, as distinguished from unliquidated claims, that the Courts had previously followed in limiting prejudgment interest to liquidated damages. The blanket exclusion of interest on unliquidated claims applies under the Act, not only to tort claims, but to claims for property damage under homeowners policies, etc., covered by the statute. To interpret the statute as not excluding unliquidated claims in tort actions, that most unliquidated of all claims, but as excluding interest on other unliquidated claims, would be to obfuscate the plain meaning of the exclusion. "In the absence of an explicit indication of a special meaning, the words of a statute are to be given their ordinary and well understood meaning." *Safeway Trails, Inc. v. Fur-*

*man,* 41 *N.J.* 467, 478, 197 *A.*2d 366 (1964). "[N]ot only would we be disregarding the plain language of the statute, but also we would be increasing the monetary liability of the Fund far beyond the limit intended by the Legislature. The judicial branch of the government has no such power." *Garcia v. Morales,* 47 *N.J.* 269, 272, 220 *A.*2d 198 (1966).

Nor is the Legislature's exclusion of interest unique to this piece of legislation. In *Crudup v. Marrero,* 57 *N.J.* 353, 273 *A.*2d 16 (1971), the Court awarded interest against the Unsatisfied Claim and Judgment Fund where there was an offer of judgment made under *R.* 4:58–1. The offer of judgment rule applies to liquidated as well as unliquidated damage claims. The Court reasoned that interest under the rule was a "procedural sanction" to effectuate early settlement and reduce court congestion. *Id.* at 361, 273 *A.*2d 16.[2] The Court in *Bellino v. Strelecki,* 121 *N.J.Super.* 331, 297 *A.*2d 15 (Law Div.1972), extended the reasoning in *Crudup, supra,* to apply to prejudgment interest against the Fund. *Bellino, supra,* was approved in *Boyd v. Marini,* 132 *N.J.Super.* 324, 333 *A.*2d 559 (App.Div. 1975). Thereafter, the Legislature passed the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 et seq., effective July 1, 1972, to exclude prejudgment interest against a public entity.

*Muschette v. Gateway Ins. Co.,* 149 *N.J.Super.* 89, 373 *A.*2d 406 (App.Div.1977), dealt with interest against the Association with respect to PIP claims that were not paid in a timely manner pursuant to *N.J.S.A.* 39:6A–5. The purpose for the imposition of interest payment and counsel fees for the nonpayment of PIP benefits was to make health care benefits available promptly and to have claims paid without the need to litigate. *Kubiak v. Allstate Ins. Co.,* 198 *N.J.Super.* 115, 119,

---

2Justice Proctor in his dissent said, "... [T]his Court lacks the power to order the Legislature to expend funds for interest and counsel fees where there is an express prohibition...." *Crudup, supra,* at 365, 273 *A.*2d 16. While the majority in dicta disagreed, the Court's majority opinion was actually predicated on an interpretation of the fund statute as authorizing interest payments.

486 *A*.2d 879 (App.Div.1984); *Gambino v. Royal Globe Ins. Co.*, 86 *N.J.* 100, 107, 429 *A*.2d 1039 (1981). *Muschette, supra*, was decided at the trial level in early 1976. The ultimate resolution of the controversy in the Supreme Court in 1978 paralleled the movement of the amendment of the Association bill through the Legislature. A–1114 passed the Assembly unanimously in June of 1979, and passed the Senate unanimously in January of 1980. The bill was approved as Chapter 448 on February 2, 1980. Just as the Legislature amended the Guaranty Act on February 22, 1980, *N.J.S.A.* 17:30A–5(e) & (f) to expressly exclude surplus lines insurers from its coverage after the Appellate Division ruling that such coverage was included under the statute, *Railroad Roofing, etc., Co. v. Financial Fire & Cas. Co.*, 171 *N.J.Super.* 375, 409 *A*.2d 300 (App.Div. 1979), the Association statute was amended to exclude unliquidated interest following the *Muschette* case.

The Legislature in amending *N.J.S.A.* 17:30A et seq., has not evidenced any change in the substantive law of compensation that the plaintiff would otherwise be entitled to. It simply has excluded itself from payment of interest on the unliquidated portion of any claim.

After the amendment of the statute to clarify its exclusion of surplus carriers, the New Jersey Surplus Lines Insurance Guaranty Fund Act (Guaranty Fund) was passed to deal with the insolvency of the Ambassador Insurance Company. (*See,* Spencer, "Surplus Lines Insurers and Guarantee Fund," 10 *Seton Hall Legislative Journal* 93 (1986), for an in-depth account thereof.)

Both funds serve similar purposes. The Guaranty Fund is merely intended to give the same protections to claimants and insureds of unauthorized insurers as is afforded to claimants and insureds of admitted insurers. To ensure the similarity of treatment, the Guaranty Fund is placed under control of the Guaranty Association.

The stated purpose of *N.J.S.A.* 17:30A–2, entitled "Property– Liability Insurance Guaranty Association," is:

... [T]o provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers. *N.J.S.A.* 17:30A–2(a).

The stated purpose of *N.J.S.A.* 17:22–6.71, "New Jersey Surplus Lines Insurance Guaranty Fund Act," is:

... [T]o provide a mechanism for the payment of covered claims under certain insurance policies issued by eligible surplus lines insurers; to avoid excessive delays in payment of the covered claims against insolvent, eligible, nonadmitted insurers; and to avoid financial loss to claimants or policyholders because of the insolvency of an eligible, nonadmitted insurer.

Since the funds are so similar, we may look at the Court's treatment of the Guaranty Fund as analogous to that of the Guaranty Association.

In *Estate of Carroll v. Samuel Geltman and Co.,* 214 *N.J.Super.* 306, 518 *A.*2d 1137 (App.Div.1986), the defendants were insured by Ambassador Insurance Company which was solvent and fell within the Guaranty Fund. After plaintiff obtained judgment, the Commission had ordered the Fund to pay only 40% of the principal amount of each covered claim against Ambassador. The issue was whether plaintiff or defendant should bear the burden of the Fund's delay and the risk that it may never pay in full.

Judge Brody, speaking for the Court, stated that:

The fund enables a claimant or policyholder to avoid financial loss only to the extent that it pays the claim. Where, as here, the fund is unable to pay a judgment against a policyholder who is a tortfeasor, the burden of delay in payment and the risk that the fund will never pay must fall on the tortfeasor, not the holder of the judgment. The Legislature did not intend to deny execution to the holder of a judgment simply because the judgment debtor happens to be a policyholder who had expected to be fully indemnified but is not because his carrier became insolvent and the fund has insufficient money to cover the loss. *Estate of Carroll, supra,* at 309, 518 *A.*2d 1137.

As previously indicated, the Association excluded payment of interest on all unliquidated claims. Prejudgment interest on such claims is part of the compensation plaintiff is entitled to. The defendant would have been left with the obligation of paying the entire judgment but for the Legislature stepping in

to form the Association. As a result of the statute, defendant is relieved of payment of all of the judgment except for the prejudgment interest. "Unless a case be found which is a conclusive authority establishing a precedent, the safest way for a court of law or equity is to decide all questions pertaining to interest according to the plainest and simplest considerations of justice and fair dealing." *Agnew Co. v. Paterson Bd. of Education,* 83 *N.J.Eq.* 49, 67, 89 *A.* 1046 (Chanc.Div.1914).

*R.* 4:42–11(b) provides for the award of prejudgment interest as a general rule. It is only *"in exceptional cases* the court may suspend the running of such prejudgment interest." *R.* 4:42–11(b) (Emphasis added.) "This language has been interpreted to mean that 'prejudgment interest can * * * be withheld only where it is demonstrated that the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand.' *Kotzian v. Barr, supra,* 152 *N.J.Super.* [561] at 565 [378 *A.*2d 256 (App.Div.1977) ]." *Ruff v. Weintraub,* 105 *N.J.* 233, 245, 519 *A.*2d 1384 (1987).

"... [T]he authorization of *R.* 4:42–11(b) for the judicial suspension of interest extends only to those cases where an award of interest would neither advance the aim of early settlement nor constitute fair compensation to plaintiff for money withheld and use or presumptively used by defendant." *Kotzian v. Barr,* 152 *N.J.Super.* 561, 566, 378 *A.*2d 256 (App. Div.1977), *rev'd* on other grounds 81 *N.J.* 360, 408 *A.*2d 131 (1979).

Considerations of 'justice and fair dealing' have been the touchstone in granting or denying prejudgment interest. In *Kearney & Trecker Corp. v. Master Engraving Co.,* 211 *N.J. Super.* 376, 382, 511 *A.*2d 1227 (App.Div.1986), the Court stated: "Prejudgment interest, which generally will not be allowed on *unliquidated claims, Jardin Estates, Inc. v. Donna Brook Corp.,* 42 *N.J.Super.* 332, 341 [126 *A.*2d 372] (App.Div.1956), may be awarded upon the application of equitable principles." (Emphasis added.) The purchaser of a machine was deprived of the machine during the time it was inoperable. During that

period, the seller of the machine retained the sales price. The Court, accordingly, upheld the trial courts' award of prejudgment interest during the time that the machine was inoperable.

In *Kotzian v. Barr, supra, rev'd* in 81 *N.J.* 360, 408 *A.*2d 131 (1979), the Court dealt with a $15,000 minimum coverage policy. The defendant, while not making a formal offer in court, did offer the $15,000 policy in settlement, but the plaintiff refused the policy limits unless prejudgment interest was added. The matter went to trial, resulting in an excess verdict. The Supreme Court held that it would be inequitable to require the carrier to pay more than its $15,000 policy limit under these circumstances.

Judge Conford, in his dissent in *Busik, supra,* contended that the prejudgment rules should not be mandatory in requiring interest with respect to tort defendants, "... who are not insured at all or are insufficiently insured, may be relative impecunious. * * * in such instances the defendant may not have actually earned interest on the award during the intervening period, or on the total amount of the award, and allowance of prejudgment interest on the whole award could well operate oppressively or unfairly." *Busik, supra,* at 384, 307 *A.*2d 571. *R.* 4:42–11(b) was accordingly amended effective April 1, 1975, to make the award discretionary.

The defendant trucking companies are not only not impecunious, but have had the benefit of the Association coming forward and paying the total judgment, absent prejudgment interest. As the Court stated in *Busik, supra,* 358, 307 *A.*2d 571, with respect to interest, "... [I]t is compensatory, to indemnify the claimant for the loss of what moneys due him would presumably have earned if payment had not been delayed." *See also, Small v. Schuncke,* 42 *N.J.* 407, 416, 201 *A.*2d 56 (1964); *Kamens v. Fortugno, et al.,* 108 *N.J.Super.* 544, 553–554, 262 *A.*2d 11 (Ch.Div.1970).

*N.J.S.A.* 17:30A–18 provides for a stay to allow the Association to undertake the defense of the matter. In *Dall'Ava v. H.W. Porter Co.,* 199 *N.J.Super.* 127, 488 *A.*2d 1036 (App.Div.

1985), there was a stay granted by the Court during the bankruptcy proceeding of Johns–Manville which did not benefit a co-defendant. In upholding the denial of prejudgment interest against the co-defendant, the Appeals Court stated, "The award of interest for the period of the stay would thus not constitute fair reimbursement to plaintiff for monies withheld and used by the defendant." *Id.* at 130, 488 *A.*2d 1036. In the case at bar, the stay was a necessary ingredient in allowing defendants to have the judgment underwritten by the Association. Not only have the defendants drawn interest from the fund presumed to be retained, but unlike *Dall'Ava, supra,* have retained the fund itself as a result of the Association's payment thereof.

While it was not the defendant's fault that its carrier went bankrupt, it was the defendant's fault that plaintiff was injured. Fault was conceded. The whole period of time between the beginning of the stay and the commencement of the trial was within six months. In argument before the Court on November 13, 1987, defendants acknowledged that there was no bad faith on the part of the Association in moving the case. The Association's counsel's letter, previously referred to, indicated in the statement of facts that, considering the more than $130,000 wage claim and the exposure for pain and suffering, the verdict was not excessive and, "In fact, even a substantially higher verdict would be unassailable."

It is the Court's conclusion that the equities are in favor of the defendants assuming the entire prejudgment interest. Not only will this result in the plaintiff being fully compensated, which is one of the underlying purposes of the rule, but placing responsibility on the defendants for prejudgment interest will serve as an impetus for defendants to involve themselves in the settlement process.

Whether it is wise in these circumstances to obligate the defendant to any extent or provide complete coverage is for the Legislature alone to determine. "... [T]he courts recognize that they have no power to overturn a law adopted by the

Legislature within its constitutional limitations, even though the law may be unwise, impolitic or unjust." *Asbury Park Press, Inc. v. Woolley,* 33 *N.J.* 1, 12, 161 *A.*2d 705 (1960). But if on the other hand the Legislature did intend to pay prejudgment interest, the remedy is with the Legislature. "... If perchance we misconceive the legislative intent, that body will quickly correct our error without appreciable loss in the interim." *Two Guys From Harrison, Inc. v. Furman,* 32 *N.J.* 199, 225, 160 *A.*2d 265 (1960).

For the foregoing reasons, the Court finds that the statute, as amended, excludes payment of prejudgment interest by the Association. Further, the Court does not find that the equities warrant relief of the defendants from their obligation to pay prejudgment interest under the circumstances of this case. The Court accordingly awards prejudgment interest in the amount of $51,912 for plaintiff, Frank Wilton, and $3,780 for his wife, Geraldine Wilton, against the defendants.