**In re G–I HOLDINGS, INC., Debtor.**

**G–1 Holdings, Inc. and Samuel J. Heyman, Plaintiffs,**

**v.**

**Reliance Insurance Company and Great American Insurance Company, and Hartford Fire Insurance Company, Defendants.**

Bankruptcy No. 01–30135(RG).
Adversary No. 01–3054(RG).
CIV.A. No. 00–6189(DMC).

United States Bankruptcy Court, D. New Jersey.

May 21, 2002.

McCarter & English, LLP, Newark, NJ, by: Anthony Bartell, Nicole Corona, Christopher Davis, Attorneys for Plaintiffs, G–I Holdings, Inc. and Samuel J. Heyman.

Wiley, Rein & Fielding, LLP, Washington, DC, by: Daniel J. Standish, Bonner, Kiernan, Trebach & Crociata, Parsippany, NJ, by: Anthony J. LaPorta, Attorneys for Defendant, Reliance Insurance Company.

Lord Bissell & Brook, Chicago, IL, by: David L. Koury, Klett, Rooney, Lieber & Schorling, PC, Newark, NJ, by Robert J. Stickles, Attorneys for Defendant, Great American Insurance Company.

White and Williams, LLP, Philadelphia, PA, by: Laura M. Spear, Attorney for Defendant, Hartford Fire Insurance Company.

**OPINION**

ROSEMARY GAMBARDELLA, Chief Judge.

The Court decides today whether to grant a motion by various insurers to stay the instant adversary proceeding, a coverage action filed by G–I Holdings, Inc., ("G–

I" or the "Debtor") and Samuel J. Heyman ("Heyman" collectively with G–I, "Plaintiffs") against Reliance Insurance Company ("Reliance"), Hartford Fire Insurance Company ("Hartford") and Great American Insurance Company ("Great American," collectively the "Insurers"). In addition, the Court must rule on whether the instant adversary proceeding is a core or non-core matter. A hearing was conducted on September 25, 2001 and the following constitutes the Court's findings of fact and conclusions of law.

**I. Facts and Procedural History**

G–I is a holding company which faces potential asbestos liability as a result of its succession to GAF Corporation. On January 5, 2001, G–I filed a chapter 11 Bankruptcy Petition in this court.

**The D & O Policies**

Reliance issued to the Debtor a primary directors and officers ("D & O") policy (the "Primary Policy"), number NDA 0152124–99B. The policy insured against losses of up to a total $15 million, subject to a retention of $250,000, for a three-year period beginning July 1, 1999, and terminating on July 1, 2002. *See* Laporta Decl. Exh. A. It provides that the Insurer "will pay on behalf of Directors and Officers [for a] Loss which the Directors and Officers shall become legally obligated to pay as a result of a Claim ... against the Directors and Officers for a Wrongful Act ..." *See* Greene Cert., Exh. C, § I(A). It further provides that the Insurer "will pay on behalf of the Company [for a] Loss for which the Company has, to the extent permitted by law, indemnified the Directors and Officers, and which the Directors and Officers have become legally obligated to pay as a result of a claim ... against the Directors and Officers for a Wrongful Act ..." *Id.*, § I(B). "Wrongful

Act" is defined in § IV(O)(1) as including "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, committed or attempted by the Directors or Officers, in their capacity as such ..." The policy further provides that the Insurer[s] "shall advance on behalf of the Insureds Claims Expenses which Directors and Officers ... have incurred in connection with Claims made against them, prior to the disposition of such claims ..." *Id.,* at § III(C). "Claims Expenses" are defined in § IV(B) as "reasonable and necessary fees (including attorneys' fees and experts' fees) and expenses incurred in the defense or appeal of a Claim ..."

Great American sold to the Debtor a follow-form excess D & O policy, number DFX0009543 (the "Excess Policy") for the period from January 1, 2000 to July 1, 2002. *See,* Greene Cert. Exh. D. The Excess Policy incorporated the language of the Primary Policy and served to insure against losses above the coverage afforded by the Primary Policy up to an additional $10 million. *Id.,* at 1. It provided that "this excess policy will conform to the exact terms, conditions, endorsements, Insured and additional Insureds of the Primary Policy at its inception, except with respect to the Limit of Liability, Policy Period, premium, endorsements attached hereto and terms as set forth below." (*Id.,* Excess Follow Form Policy Number D2150 [1/99] at 1). The policy also provided that Great American "shall be liable only after the Insurers of the Underlying Insurance shall have agreed to pay or have been held liable to pay the full amount of their respective limits ..." *Id.,* § II(E).

Hartford purchased some of Reliance's assets and assumed some of Reliance's liabilities pursuant to an asset purchase agreement on June 30, 2000. *See,* Bartell Cert. dated October 26, 2001, Exh. F, H. On that date, Hartford agreed to reinsure Reliance's coverage of certain D & O claims and to act as Reliance's claim administrator with respect to certain D & O coverage claims. Plaintiffs' Amended Complaint therefore adds Hartford as defendant and seeks coverage from Hartford to the extent Hartford assumed Reliance's obligations under the D & O policy.

### Losses Suffered by the Insured

In early 2000, two actions were commenced against Heyman for his role in the January 1, 1997 restructuring of G–I and transfer of stock in a former subsidiary of G–I, International Specialty Products, Inc. ("ISP"). The suits are captioned *Harry W. Nettles, On Behalf of Himself and Others Similarly Situated v. Samuel J. Heyman,* 00–CIV–0035 (United States District Court, S.D.N.Y., filed 1/3/00)[1] and *Center for Claims Resolution, Inc. v. Samuel J. Heyman, et al.,* Index No. 006604002 (Supreme Court of the State of New York, New York County, filed 1/18/00). Plaintiffs provided the Insurers with timely notice of the actions and sought coverage for G–I's defense and indemnification costs associated with defending the two actions. Reliance denied coverage and Great American's denial followed shortly.

Additionally, by order dated May 14, 2001, this Court authorized the Official Committee of Asbestos Claimants of G–I Holdings Inc. (the "Asbestos Committee") to pursue and prosecute claims and causes of action belonging to G–I and/or its estate

---

1. On November 15, 2000, the *Nettles* plaintiffs moved for leave to file an Amended Complaint which added thirteen named class representatives, the "Steward claimants". On December 26, 2000, the Stewart claimants filed a separate class action complaint, *Burton Stewart et al v. Samuel J. Heyman,* No. 00Civ.9769, asserting the same causes of action asserted in *Nettles.*

against Samuel Heyman and his affiliates arising out of the transfer of the stock of the debtor's subsidiary, International Specialty Products, Inc. ("ISP"), and/or ISP Holdings, Inc., including claims or causes of action pursuant to § 544(b) of the Bankruptcy Code. The Asbestos Committee thus commenced a $1 billion fraudulent conveyance action against Samuel J. Heyman on September 17, 2001 in the U.S. District Court for the Southern District of New York. (*Official Committee of Asbestos Claimants of G–I Holdings Inc. v. Samuel J. Heyman,* Action No. 01 Civ.8538). Plaintiffs assert they gave their insurers formal notice of this action on October 12, 2001. *See,* Pl.'s Letter Br. dated November 26, 2001 at 5.

## II. The Instant Action

On November 14, 2000, Plaintiffs commenced an insurance coverage action in the Superior Court of New Jersey, Law Division, Middlesex County. The action was captioned *GAF Corp. and Samuel Heyman v. Reliance Insurance Co. and Great American Insurance Co.,* Docket No. L009243–00, and sought declaratory judgment against the Insurers on the D & O Policies regarding the rights and duties of the parties. Plaintiffs also seek damages, including consequential and punitive damages for the alleged breach of the insurance contract. Compl. ¶ 10.

On December 21, 2000, Reliance and Great American removed the coverage ac-

tion from the Superior Court of New Jersey to the United States District Court, pursuant to 28 U.S.C. § 1441(a) and § 1332. The case was assigned to United States District Judge Dennis M. Cavanaugh and docketed as Civil Action No. 00–06189(DMC).

On January 5, 2001, the Debtor filed its bankruptcy petition. On January 30, 2001, the Plaintiffs voluntarily dismissed the District Court action and re-filed the action as this adversary proceeding in connection with G–I's bankruptcy case. The complaint asserts that the coverage action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). On March 21, 2001, Reliance and Great American moved the district court to withdraw the reference to bankruptcy court[2]. By order dated July 27, 2001, Judge Cavanaugh denied the motion without prejudice "pending the resolution by the bankruptcy court on the issue of whether the instant [coverage] proceeding is a core or non-core matter."[3]

In the interim, on May 29, 2001, the Commonwealth Court of Pennsylvania entered an order placing Reliance into statutory rehabilitation pursuant to Penn. Stat. Ann. Tit. 40 §§ 221.1–221.63. The Commonwealth Court appointed M. Diane Koken, the Insurance Commissioner of Pennsylvania, as the statutory rehabilitator who would determine whether Reliance could be rehabilitated. The rehabilitation order stayed all actions against Reliance for 60

---

**2.** Although the instant coverage action was referred to the Bankruptcy Court by virtue of the standing order of reference, a motion to withdraw the reference is properly heard by the District Court. It has been established that in the instance of a motion to withdraw the reference, such as here, it is appropriate for the bankruptcy court to determine the classification of the proceeding, *See* 28 U.S.C § 157(b)(3), and for the district court to then decide the motion to withdraw the reference. *See also,* 28 U.S.C. § 157(d), *Travellers Int'l*

*AG v. Robinson,* 982 F.2d 96, 97–98 (3d Cir. 1992) (discussing bankruptcy court's determination of core/non-core in connection with a motion to withdraw the reference); *Dailey v. First Peoples Bank of New Jersey,* 76 B.R. 963, 968–969 (D.N.J.1987) (stating that bankruptcy code supposes the core/non-core determination will be made by the bankruptcy court).

**3.** *See,* J. Cavanaugh's Order dated June 27, 2001.

days or such additional time as the rehabilitator may request, until such determination could be made.

On July 9, 2001, Reliance filed a motion to stay the instant coverage action in its entirety pending the determination of the Pennsylvania Statutory Rehabilitator. Plaintiffs filed their opposition and Reliance and Great American separately filed replies thereto in support of the stay motion. On September 25, 2001, this Court heard oral argument and reserved decision. On that same date, the parties also presented argument in connection with the Motion to Withdraw the Reference on the issue of whether the instant proceeding is a core or non-core matter.

While the stay motion was pending, the Rehabilitator concluded that Reliance could not be rehabilitated. On October 3, 2001, the Commonwealth Court entered an order which placed Reliance into statutory liquidation pursuant to Penn. Stat. Ann. Tit. 40 § 221 et. seq. It provided in relevant part that:

> Unless the Liquidator consents thereto in writing, no action at law or equity, or arbitration or mediation, shall be brought against Reliance or the Liquidator, whether in this Commonwealth or elsewhere, nor shall any such existing action be maintained or further prosecuted after the date of this Order. All actions, including arbitrations and mediations, currently pending against Reliance in the courts of the Commonwealth of Pennsylvania or elsewhere are hereby stayed. All actions, arbitrations and mediations, against Reliance or the Liquidator shall be submitted and considered as claims in the liquidation proceeding.
>
> All proceedings in which Reliance is obligated to defend a party in any court of this Commonwealth are hereby stayed for ninety (90) days from the date [sic] this Order. The Liquidator, pursuant to 40 P.S. § 221.5(a), her designees and/or the Pennsylvania Property and Casualty Insurance Guaranty Association may petition this Court for extensions as needed in the exercise of their respective discretion. With respect to suits and other proceedings in which Reliance is obligated to defend a party, pending outside the Commonwealth of Pennsylvania and in federal courts of the United States, this Order constitutes the request of this Court for comity in the imposition of a 90-day stay by such courts or tribunals, and that those courts afford this order deference by reason of this Court's responsibility for and supervisory authority over the rehabilitation of Reliance, as vested in this Court by the Pennsylvania Legislature. The Liquidator is authorized to cooperate in assisting any guaranty association in any jurisdiction to enforce any stay of any action provided for in any relevant law of another state. Any person that fails to honor a stay ordered by this Court or violates any provision of this Order, where such person has a claim against Reliance, shall have their claim subordinated to all other claims in the same class, with no payment being made with respect so such claim until all others in the same class have been paid in full, in addition to any other remedies available at law or in equity.

Order of Liquidation, ¶ 22 and ¶ 23.

After the entry of the order of liquidation, Insurance Commissioner Koken was designated as the statutory liquidator (the "Liquidator"). Plaintiffs then agreed that they will not continue the instant coverage proceeding against Reliance. As directed by the order of liquidation, Plaintiffs will instead submit their claim against Reliance in the Pennsylvania liquidation proceeding.

On October 16, 2001, this court conducted a conference call with the parties to discuss the status of the instant action in light of Reliance's liquidation order. In followup to that call, the Liquidator asked all parties to stipulate to a dismissal of this coverage action against Reliance. *See,* Suppl. Bartell Cert. Exh A. Plaintiffs in turn asked Great American, Hartford and the responding state insurance guaranty funds which became involved as a result of the entry of the order of liquidation (collectively, the "Other Insurers") to consent that the instant coverage action may go forward against them. *Id.,* Exh. B; *See* Plaintiff's letter to the Court, dated November 1, 2001. The Other Insurers, however, do not consent and continue to seek a stay of this coverage action against them. Plaintiffs object to such a stay and thus all parties did not agree to a final stipulation.[4]

By letter dated October 30, 2001, the Liquidator asked this Court to convert the Motion For Stay Pursuant to Order of Rehabilitation into a Motion For Stay Pursuant to Order of Liquidation and to stay the matter indefinitely as to Reliance. The Liquidator advised that plaintiffs, Great American and Hartford agree to the entry of a stay of the instant coverage action against Reliance.

In order to clarify the parties' positions, further briefs and responses were filed. On November 9, 2001, Plaintiffs filed a supplemental letter brief in opposition to the continued request for a stay. On that same date, Great American filed a letter brief which responded to the Liquidator's October 30, 2001 letter and conveyed Great American's position regarding a stay of this proceeding. On November 16, 2001, Great American filed a response to the Plaintiffs' November 9, 2001 letter. On November 26, 2001, Plaintiffs submitted a letter brief which responded to Great American's supplemental stay brief and November 16, 2001 letter. *See also,* Hartford's letter of Nov. 9 wherein Hartford likewise seeks a stay of this action on similar grounds.[5] (See Letter dated October 30, 2001).

Essentially, the current status of the stay motion can be described as follows. With regard to Reliance, there remains an unopposed motion to indefinitely stay the instant coverage action. With regard to the Other Insurers, the motion to stay the coverage action is opposed by Plaintiffs. The Reliance Liquidator, however, no longer seeks to stay the action against the Other Insurers.

### III. Stay Analysis

Initially, this Court will grant the Liquidator's Motion for Stay Pursuant to the Order of Liquidation and enter an indefinite stay of this action as to Reliance. *See Feige v. Sechrest,* 90 F.3d 846, 851 (3d Cir.1996). In addition, the court must decide whether the instant adversary proceeding should be stayed against the Other Insurers. As noted above, the motion originally sought to stay the entire coverage action in deference to Reliance's pending rehabilitation. Due to the liquidation order, Plaintiffs' claim against Reliance will now go forward in the Pennsylvania liquidation proceeding and Reliance no longer seeks to stay this entire coverage proceeding. Since this affects the arguments advanced in the briefs, the court

---

**4.** Plaintiffs ask the Court to confirm that they can continue their coverage claims against the Guaranty Funds, Great American and Hartford so that the Other Insurers cannot raise the issue at a later date and further delay Plaintiffs' efforts to be heard on the merits of the coverage dispute. *See* Pl.'s Letter Br. dated November 9, 2001, n. 2.

**5.** The letter was apparently filed in Adv. Proc. 01–3085.

reviews the parties' positions in light of the changed circumstance.

The reasoning set forth by Great American is explicitly predicated upon Reliance's rehabilitation and the attendant request for a temporary stay. Great American first posited that considerations of judicial economy call for one coordinated insurance action as opposed to duplicative litigation.[6] *See,* Great American Reply Br., filed on Sept. 20, 2001. However, in light of Reliance's liquidation, there will be no future opportunity to litigate the entire coverage action in a single coordinated proceeding. Great American further argued that the temporary stay sought by Reliance would not cause undue hardship to the Plaintiffs. This argument too is rendered moot, since Reliance has now obtained an indefinite stay of the instant coverage action. Only Great American's final argument remains viable, wherein Great American asserts substantive defenses to the coverage claim. That argument will be addressed below.

Similarly, Reliance's arguments which are incorporated to the extent applicable to Great American, cannot stand. *See,* Great American Reply Br. at 2. Reliance argued that principles of comity, *see, e.g., Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936), as well as the abstention doctrine discussed in *Burford v. Sun Oil,* 319 U.S. 315, 334, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Lac*

*D'Amiante du Quebec, Ltee v. American Home Assur. Co.,* 864 F.2d 1033, 1038 (3d Cir.1988), *Feige v. Sechrest,* 90 F.3d 846, 847 (3d Cir.1996), and *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) support deference to the Commonwealth Court's stay request.[7] However, since the Liquidator who is charged with Reliance's liquidation no longer seeks to stay the coverage action against the Other Insurers, that request has effectively been withdrawn. The Other Insurers have not presented any basis for abstention in light of Reliance's withdrawal. *See, e.g., Univ. of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 271 (3d Cir.1991) (holding *Burford* abstention only applicable when the insolvent insurer is one of the parties); *Glushakow v. Confederation Life Ins. Co.,* 1994 WL 803204 at *9 (D.N.J.1994). The final point that "continued prosecution of this action as to Great American would eviscerate the benefit of any stay that would be entered as to Reliance" obviously falls away in light of the Liquidator's apparent consent.

■ In a letter brief dated November 9, 2001, Great American maintains that it is entitled to a stay, even though the Liquidator no longer seeks one on Great American's behalf. First, Great American argues that the claim against it is not yet

---

6. I.e., to allow Plaintiffs to litigate against the Other Insurers while Reliance is under a rehabilitation stay; and then if Reliance is actually rehabilitated, to re-litigate against Reliance.

7. The "Burford" doctrine has been summarized by the Third Circuit in *Univ. of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 270 (3d Cir.1991) as follows:

Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Service, Inc. v. Council of City of New Orleans ("NOPSI"),* 491 U.S. 350, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989).

ripe. According to the terms of the Excess Policy, Great American is not liable unless the underlying Reliance policy limit of $15 million and retention of $250,000 are first exhausted by covered loss. Great American thus seeks to stay the instant proceeding until Plaintiffs successfully pursue their claim against Reliance in the liquidation proceeding, and Reliance's $15 million limit of liability is exhausted.

The foregoing argument, however, is irrelevant to the instant motion. The issue it raises—whether the terms of the Excess Policy support a claim at this point against Great American—is appropriate either for a motion seeking summary judgment or the subsequent hearing on the merits. It is not relevant to whether the adversary proceeding should be stayed as against Great American on account of Reliance's statutory liquidation.[8]

■ Second, Great American argues that under N.J.S.A. § 17:30A–18 the action must be stayed. That provision, contained in the statute governing New Jersey's Property Liability Insurance Guaranty Association, states that:

Upon application and notice all proceedings in which the insolvent insurer is a party or is obligated to defend a party in any court in this State shall be stayed for 120 days and such additional time thereafter as may be determined by the court from the date the insolvency is determined or any ancillary proceeding is initiated in the State, whichever is later, to permit proper defense by the association of all pending causes of action. . . .

This statute however, does not support Great American's request for a stay. Section 17:30A–18 by its terms applies where the insolvent insurer is a party or is obligated to defend a cause of action. The Guaranty Association steps in to protect the policy holders of the insolvent insurer and pay claims. *See, e.g.,* N.J.S.A. § 17:30A–2(a); *N.J. Guaranty Ass'n v. Ciani,* 242 N.J.Super. 164, 576 A.2d 300 (App.Div.1990). The purpose of the stay is to allow the Association to undertake defense of the action against the insolvent insurer. *See, Wilton v. Cycle Trucking,* 240 N.J.Super. 451, 463, 573 A.2d 525 (Law Div.1987).

■ Here, Reliance essentially is no longer part of the coverage proceeding. By consent of all parties, and the Opinion of this Court issued today, the action is stayed indefinitely as to Reliance. There is simply no basis in the statute to stay actions against solvent insurers such as Great American or Hartford. Moreover, even if N.J.S.A. § 17:30A–18 were applied here, the 120–day stay proscribed by the statute has since expired on or about January 31, 2001.

In sum, the Other Insurers hope for an omnibus stay where the party in statutory liquidation does not seek the stay. The parties have not presented any meaningful basis for such relief in the current situation. Insofar as there is no basis under the Bankruptcy Code or the governing case-law, the motion for a stay as to the Other Insurers must be denied.

Pursuant to the instruction of the District Court and this Court's own scheduling order of August 13, 2001, the court must now determine for the Motion to Withdraw the Reference whether the in-

---

**8.** Since the Court only addresses the issues relevant to the stay motion, we need not reach the issue raised by Great American as to whether Plaintiffs assert a justifiable claim under the Federal Declaratory Judgment Act.

*See,* 28 U.S.C. 220; *ACandS, Inc. v. Aetna Casualty & Surety Co.,* 666 F.2d 819, 822 (3d Cir.1981). Plaintiffs countered that Great American's argument is eviscerated by the Creditors Committee Action for damages.

stant coverage action is a core or non-core proceeding.[9]

## IV. Core Non–Core Analysis

■ The Insurers in their Motion to Withdraw the Reference maintain that the instant coverage action is a non-core proceeding. In response, the Debtor essentially argues that monies allegedly owed under the D & O insurance policies should be deemed property of the estate. Since these proceeds are "a crucial asset of the bankruptcy estate" the coverage action should be viewed as a core proceeding. Debtor's Opp. Br. at 6. Both points of Debtor's argument are challenged.

■ The Court of Appeals for the Third Circuit prescribed the approach for determining what is a core proceeding. First, a court must look at the illustrative list of core proceedings enumerated at 28 U.S.C. § 157(b).[10] The list guides the court as to what types of matters are commonly core. *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir.1999); § 157(b)(2)(A)(o). Next, the court must examine whether the proceeding in question "[1] invokes a substantive right provided by Title 11 ... or [2] by its nature, could arise only in the context of a Bankruptcy Case". *Halper*, 164 F.3d at 836, quoting *In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir.1996). This second examination serves to ensure that the Bankruptcy Court's exercise of core-proceeding jurisdiction does not extend beyond the constitutional constraints discussed in *Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *see, Halper*, 164 F.3d at 836.

Here, the nature of the action is straightforward. The Plaintiffs assert that the insured losses occurred during the coverage period. They state that proper notice was given, and nonetheless, the Insurers denied coverage. Plaintiffs then

---

**9.** Following that determination, the District Court will hear the motion to Withdraw the Reference, which will determine the forum for the rest of this coverage action, including the various pre-trial motions which are currently pending. By this Opinion, this Court does not reach issues raised by Hartford in its Motion to Dismiss Amended Complaint pending before this Court.

**10.** (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to(A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (C) counterclaims by the estate against persons filing claims against the estate; (D) orders in respect to obtaining credit; (E) orders to turn over property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property, including the use of cash collateral; (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. 28 U.S.C.A. § 157 (West 2002).

brought this action against the Insurers seeking declaratory judgment and monetary damages arising from these alleged breaches of insurance policies.[11]

■ Looking first to § 157(b), the coverage action does not fall under any of the enumerated situations. The cause of action does not appear to be listed in § 157(b). However, since § 157(b)(2) states that core proceedings "include, but are not limited to" the enumerated proceedings, the list therein is nonexclusive. As the *Halper* court explained, the court must continue and examine whether the proceeding in question may be core because it "[1] invokes a substantive right provided by Title 11 ... or [2] by its nature, could arise only in the context of a Bankruptcy Case."

The instant action also falls outside the additional bases for core jurisdiction. Under the first option, the coverage action does not assert a right provided by Title 11. The right to performance on an insurance agreement is grounded in state contract law. *See, Bernheim v. Chubb Ins. Co. of Canada*, 160 B.R. 42, 46 (D.N.J. 1993) (holding that an action to recover on an insurance policy is purely a state law contract claim). Additionally, with regard to the second option it cannot be said that

the nature of this action could arise only in the context a Bankruptcy Case. The existence of the coverage action was not dependant on the underlying bankruptcy case. Regardless of whether the bankruptcy petition had been filed, Plaintiffs would have been able to pursue their claims against the Insurers. In fact, the coverage action was commenced in state court approximately two months prior to the initial filing of the bankruptcy petition. Under *Halper* it is clear that the instant action is a non-core proceeding.

Debtor counters that the insurance coverage action is a core proceeding because the insurance funds are a crucial asset of the estate. It cites *Matter of Celotex Corp.*, 152 B.R. 667 (Bankr.M.D.Fla.1993) wherein the debtor sought a declaration that numerous insurance policies obligated defendants to defend and indemnify the debtor against existing or anticipated claims stemming from asbestos-related property damage, environmental damage and asbestos-related personal injury. That court held the coverage action was a core proceeding because the insurance policies and proceeds were deemed assets of the estate. Debtor also cites *In re St. Clare's Hospital*, 934 F.2d 15 (2d Cir.1991) in support of its position. In that case, the Debtor brought a declaratory judgment

11. The alleged breaches occurred after the Defendants refused to cover the costs of defending, or ultimately indemnify the debtor in possession for liability stemming from three lawsuits against Samuel J. Heyman, who at the time the causes of action arose, was the Chairman of the Board and Chief executive Officer of GAF Corporation. The first suit is a putative class action lawsuit brought by Harry W. Nettles, the second is a separate class action filed by proposed additional class action representatives in the *Nettles* case, and the third suit was brought by the Center for Claims Resolution ("CCR"). All three of the suits were brought as a result of an allegedly fraudulent transfer of International Specialty Products, Inc. ("ISP") stock to Samuel J.

Heyman and other minority shareholders of GAF Corporation.

Prior to January 1, 1997, ISP Holdings Inc. ("ISP Holdings") was a wholly-owned subsidiary of GAF. On January 1, 1997, GAF effected a series of transactions involving its subsidiaries that resulted in, among other things, the capital stock of ISP Holdings being distributed to the stockholders of GAF. On July 15, 1998, International Specialty Products Inc. ("Old ISP") merged with and into ISP Holdings. In connection with the merger, ISP Holdings changed its name to International Specialty Products Inc. Effective November 2000, G–I Holdings Inc. became the successor by merger to GAF Corporation and certain of GAF's subsidiaries.

action against its medical malpractice insurer and the court held the action was a core proceeding. This ruling was followed by *In re Prudential Lines*, 170 B.R. 222 (S.D.N.Y.1994) where the court held that a declaratory judgment action to determine coverage under the debtor's marine protection and indemnification policies was a core proceeding. *See also In re County Seat Stores, Inc.*, 2002 WL 141875 * 5 (S.D.N.Y.2002) ("in the bankruptcy context, where a debtor is faced with substantial liability claims within the coverage of an indemnity policy, 'resolving disputes relating to major insurance contracts are bound to have a significant impact on the administration of the estate'", supporting "core" jurisdiction).

■ Debtor's position may not be maintained on a number of grounds. First, the Debtor has not supported its position with precedential authority which is binding upon this court. Second, the Debtor's argument is predicated upon a holding that the proceeds of the policy are property of the estate. *See, In re Louisiana World Exposition*, 832 F.2d 1391, 1399–1401 (5th Cir.1987) (distinguishing between ownership of an insurance policy and its proceeds). Whether the proceeds are property of the estate will turn on who is the beneficiary, rather than the owner, of the policy. *See, First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir.1993)(holding that property of the estate did not include proceeds of credit life insurance policy because owner was not the beneficiary of policy); *see also, Excelsior Ins. Co. v. Pennsbury Pain Center*, 975 F.Supp. 342, 353 (D.N.J.1996)(holding that "an insurance policy is only an asset of the [estate] to the extent that it increases the [estate's] assets or diminishes its liabilities").

Here, however, the parties have not yet established who is and is not a beneficiary.

The policy provides coverage for liability of the D & O's if they are legally obligated to pay for a covered loss. It also provided coverage for reimbursement to Debtor where it has indemnified the D & O's. *See* Greene Cert. Exh. C, ¶ I(A) through ¶ I(B). The Debtor may have entered into an indemnification agreement with the D & O's and may have already advanced indemnity payments. These factors may impact the determination of who is obligated to whom. Thus, with regard to the instant coverage claims, at this point there are various possibilities as to who is a beneficiary: the Debtor may be the exclusive beneficiary; it may hold a right jointly with the D & O's; and it may also have no direct right at all to the proceeds of the policy. As noted above, Debtor's position consists of a two-step analysis, and the first step has not been properly validated.

Moreover, assuming *arguendo* the insurance proceeds are property of the estate, the analysis in *Celotex* and *Prudential* turned on "core" factors absent here. In *Celotex*, the court at length explained that the policy and proceeds at issue served to insure the Debtor against precisely the kind of claims being asserted in the bankruptcy case. The funding of the plan of reorganization was to be provided by the proceeds of that policy. The claimants were to be the direct beneficiaries of the policy. That court further explained that the "entire adjudicatory process is bound up in the Debtor's seminal tenet that the funding of the Chapter 11 plan through the utilization of the insurance proceeds will compensate the significant parties of interest having claims stemming from asbestos-related injury." *Celotex*, 152 B.R. 667, 676. That court's holding does not necessarily extend to an important asset in a bankruptcy case. *Celotex's* insurance coverage action was a core proceeding specifi-

cally because it was the "linchpin" of the reorganization effort. *Id.*

Similarly, *In re Prudential Lines,* is inapposite to the instant situation. There, 7000 asbestos claims were filed and the trustee of a trust for asbestos claims created by the debtor's confirmed Chapter 11 plan sought determination of its insurance coverage for those claims. As that court detailed, "determination of coverage under those policies, and the operation of the specific provisions of those policies such as the 'pay first' and deductible provisions [are] essential and inextricably tied to the administration of the case". *In re Prudential Lines,* 170 B.R. 222, 229. Here, while the proceeds of the D & O policy are surely important, the Debtor has not shown any basis for characterizing them as the linchpin of or as essential to the effort to reorganize this Debtor.

 Although not a core proceeding, this coverage action obviously does "relate to" the bankruptcy case. Under the governing standard, a proceeding is to be designated a non-core related proceeding if it may have a conceivable effect on the bankruptcy case. *See, Pacor v. Higgins,* 743 F.2d 984 (3d Cir.1984), *rev'd on other grounds, see, Halper* 164 F.3d 830 n. 8. Here, the Debtor is a plaintiff in the coverage action. It seeks to force the insurers to indemnify Mr. Heyman for what is stated as millions of dollars of defense costs, instead of the Debtor paying for these costs. As such, the estate may be affected by a determination that the Defendants are or are not responsible for defending the suits and possibly indemnifying Debtor's liability.

Accordingly, this Court finds that the present coverage action is a non-core related proceeding. This matter is hereby referred back to the Honorable Dennis M. Cavanaugh, U.S.D.J., for a determination on the Motion to Withdraw the Reference.

An order in accordance with this Opinion shall be submitted.