**VALLEY FORGE PLAZA ASSOCIATES**

v.

**FIREMAN'S FUND INSURANCE COMPANIES, the American Insurance Company and Associated Indemnity Corp.**

**Misc. No. 89–0365.**

United States District Court,
E.D. Pennsylvania.

Nov. 8, 1989.

Ellen M. Nicholson, Adelman Lavine Gold and Levin, Philadelphia, Pa., for plaintiff.

Robert A. Korn, Philadelphia, Pa., Benjamin D. Schwartz, Chicago, Ill., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff, Valley Forge Plaza Associates ("Valley Forge"), filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (assigned to Bankruptcy Judge David Scholl) on March 28, 1989.

On May 30, 1989, plaintiff filed a complaint in the Bankruptcy Court against the defendants, Fireman's Fund Insurance Companies, The American Insurance Company and Associated Indemnity Corp. (collectively the "Insurance Companies"). In its complaint, plaintiff alleges that on or before March 16, 1988 the defendants entered into an insurance contract with Altemose Enterprises, Ltd. ("Altemose") under which the Insurance Companies were to provide general liability and liquor liability insurance. The policy included as insureds any subsidiary, affiliated, associated, owned or controlled companies. According to the complaint, this generic designation of insureds was specifically intended to include Valley Forge. On April 3, 1989 (after plaintiff had filed its petition) the Insurance Companies mailed Altemose a notice of non-renewal effective as of June 1, 1989. Plaintiff asserts that under Pennsylvania law this notice was ineffective and its issuance by the defendants constituted a breach of contract. The complaint sought a declaratory judgment that the insurance policy remained in effect, an order enjoining the cancellation of the policy, compensatory and punitive damages and attorney's fees.[1]

On June 29, 1989, defendants filed an answer arguing, *inter alia*, that the Bankruptcy Court lacked subject matter jurisdiction.[2]

---

1. Subsequent to filing its complaint, plaintiff obtained replacement insurance coverage.

2. The answer included a counterclaim seeking judgment for payment of premiums due on the policy. This counterclaim, together with a motion plaintiff filed in Bankruptcy Court for contempt and sanctions on July 17, 1989, was settled in a hearing before the Bankruptcy Court on August 16, 1989.

On the same day that defendants filed their answer in Bankruptcy Court, they filed a motion in this court to withdraw the reference to the Bankruptcy Court. In their motion, defendants contend that, since they do not consent to having a bankruptcy judge hear the action, the bankruptcy judge can not enter a final judgment on the matter. Thus, defendants contend, judicial economy is served by withdrawing the reference. Moreover, defendants argue that, since only Altemose has standing to bring this action, the action involves only the rights of non-debtor parties; therefore, the Bankruptcy Court has no authority to even submit proposed findings of fact and conclusions of law.

## I

The jurisdiction of this court is predicated on 28 U.S.C. § 1334. Under 28 U.S.C. § 157(a) bankruptcy cases and proceedings may be referred to a bankruptcy judge for the district. The provisions of 28 U.S.C. § 157(b)(1) allow the bankruptcy judge to hear and determine all bankruptcy cases and all core proceedings arising in a bankruptcy case. Under 28 U.S.C. § 157(c)(1) a bankruptcy judge may not enter a final order or judgment with respect to non-core proceedings, but he may submit proposed findings of fact and conclusions of law. Although, in general, bankruptcy proceedings should be adjudicated in the bankruptcy courts, 28 U.S.C. § 157(d) provides that the district court may withdraw any case or proceeding for cause shown.[3]

A key factor in deciding whether reference should be withdrawn is the characterization of the proceeding as core or non-core. The reference is much more likely to be withdrawn if the proceeding is characterized as non-core since, as explained above, a bankruptcy judge may not enter a final order or judgment in non-core proceedings.[4]

It has been stated that "[i]n general, 'core' proceedings include all proceedings integral to the restructuring of debtor-creditor rights, whether or not they involve questions of state law, and all proceedings in which the right to relief is created by title 11 of the United States Code." *Windsor Communications Group, Inc. v. Grant*, 75 B.R. 713, 721 (E.D.Pa.1985) (report of bankruptcy judge annexed to opinion). A non-exclusive list of core proceedings is provided in 28 U.S.C. § 157(b)(2). This list includes "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A).

A number of courts have held that an action by a debtor or trustee against the debtor's insurer is a non-core proceeding. *Rosen–Novak Auto v. Honz*, 783 F.2d 739 (8th Cir.1986) (debtor's action alleging that insurer was estopped from cancelling policy was non-core); *In re Ramex International, Inc.*, 91 B.R. 313 (E.D. Pa.1988) (trustee's action for declaratory judgment under an insurance policy issued pre-petition is non-core); *In re A.I.A. Industries*, 75 B.R. 1013 (Bankr.E.D.Pa.1987) (trustee's action for improper cancellation of an insurance contract is non-core); *In re R.I. Lithograph Corp.*, 60 B.R. 199 (Bankr. D.R.I.1986) (debtor's action for pre-petition breach of insurance contract based on refusal to pay claim is non-core).

Moreover, defendants contend that the plaintiff's breach of contract action based on state law is precisely the type of claim which the Supreme Court held could not be decided by a non-Article III judge in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

Although 28 U.S.C. § 157(b)(3) provides that a determination that a proceeding is non-core shall not be made solely on the basis that its resolution may be affected by state law, it has been observed that allowing bankruptcy judges to decide issues which turn on state law must be distinguished from deciding state law claims, the

---

**3.** Under Federal Rule of Bankruptcy Procedures 5011(a) a motion to withdraw is properly decided by the district court, not the bankruptcy judge.

**4.** However, this characterization of the proceeding as core or non-core does not end the analysis as even core proceedings may be withdrawn for cause shown.

latter violating the principles laid down in *Marathon Pipe Line. In re Hudson Oil Co.*, 68 B.R. 735, 740 (D.Kan.1986).

It has been suggested, however, that since the state law contract claim in *Marathon Pipe Line* was based on a pre-petition cause of action, the Court's holding does not apply to post-petition causes of action. *In re Mike Burns Inn, Inc.*, 70 B.R. 863, 867 (Bankr.D.Mass.1987). Indeed, the Court in *Marathon Pipe Line* characterized the state law claim on which the suit was based as "a right independent of and *antecedent* to the reorganization petition that conferred jurisdiction upon the bankruptcy court." *Marathon Pipe Line*, 458 U.S. at 84, 102 S.Ct. at 2878 (emphasis added).

In *In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir.1987) the Court of Appeals for the First Circuit determined that a post-petition cause of action for an account receivable is not encompassed by the *Marathon Pipe Line* holding. In that case the court stated:

> The Supreme Court has repeatedly turned to history and tradition to help define the type of adjudicatory proceeding that the Constitution reserves exclusively for Article III courts.... [F]or example, the [Court has] explicitly stated that *Marathon*'s holding applied to "a *traditional* contract action arising under the state law" [quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 584 [105 S.Ct. 3325, 3334, 87 L.Ed.2d 409] (1985) (emphasis added)].... The Court has indicated that it will examine closely congressional attempts to control the adjudication of "rights [that] were *historically* ... subject to resolution by Article III courts." [Quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 854 [106 S.Ct. 3245, 3258, 92 L.Ed.2d 675] (1986) (emphasis added)].

> If one examines the jurisdictional history of post-petition claims [for accounts receivable], one finds that they are not "traditional contract actions"; nor are they matters that "historically" have been decided only in the equivalent of

Article III courts. To the contrary, bankruptcy courts have adjudicated [claims for post-petition accounts receivable] at least since the enactment of the Bankruptcy Act of 1898.

*Arnold Print Works*, 815 F.2d at 169.

I find the court's reasoning in *Arnold Print Works* persuasive and conclude that it applies not only to a claim for an account receivable based on the post-petition breach of a contract but to other post-petition breach of contract claims as well, such as the declaratory judgment, injunction and damages claims in the case at hand. Therefore, I conclude that the Supreme Court did not intend to include these post-petition breach of contract claims in the category of "traditional" contract actions which could be adjudicated only in Article III courts.

In short, there appears to be no constitutional impediment that would prevent a bankruptcy court from deciding a post-petition cause of action based on a state law contract claim. What remains to be determined is whether Congress intended that such post-petition causes of action be decided by bankruptcy courts. A number of courts have held that actions based on post-petition causes of actions are within § 157(b)(2)(A) ("matters concerning the administration of the estate") and, therefore, can be heard and determined by a bankruptcy judge. *See, Arnold Print Works*, 815 F.2d at 168; *In re O'Sullivan's Fuel Oil Co., Inc.*, 88 B.R. 17, 20 (D.Conn.1988); *J.B. Van Sciver Co. v. William Cooper Associates, Inc.*, 73 B.R. 838, 844 (Bankr.E.D.Pa.1987); *In re Epi–Scan, Inc.*, 71 B.R. 975, 979 (Bankr.D.N.J.1987). *See also*, 1 L. King, Collier on Bankruptcy ¶ 3.01[2][b][iv] (15th ed. 1989) (action brought on a post-petition account receivable is a core matter). It is arguable that in some of these cases the cause of action may have been more intimately related to the administration of the estate than in the case at hand. In *Arnold Print Works* and *Van Sciver* actions for breach of post-petition sales contracts arose from the debtor's efforts to liquidate property. However, in *In re Heaven Sent, Ltd.*, 50 B.R. 636 (Bankr.E.D.Pa.1985), plaintiff had argued that insurance coverage was necessary for the suc-

cessful reorganization of his business and the court held that a cause of action based on post-petition cancellation of an insurance contract was a core proceeding. The *Heaven Sent* court found that the preservation of insurance coverage was directly related to the administration of the estate in a Chapter 11 proceeding under § 157(b)(2)(A).

I am persuaded that a cause of action based on a post-petition breach of contract should not be deemed a "traditional" contract action which the Supreme Court has reserved exclusively for Article III courts and that preservation of an insurance contract is a matter concerning the administration of the estate within the meaning of § 157(b)(2)(A). I, therefore, find that plaintiff's complaint is a core proceeding.

## II

■ Notwithstanding that this proceeding is properly characterized as core, under § 157(d) the reference may be withdrawn for cause shown. In this regard the district court is given broad discretion. *In re Enviro–Scope Corp.*, 57 B.R. 1005, 1008 (E.D.Pa.1985).

■ Some courts have determined that the provision allowing withdrawal for cause shown creates a presumption that Congress intended bankruptcy proceedings to be adjudicated in the bankruptcy courts and that this presumption may be overcome only when essential to preserve an interest greater than that recognized by Congress. *Harley Hotels, Inc. v. Rain's International, Ltd.*, 57 B.R. 773, 783 (M.D. Pa.1985). It has been held that the promotion of judicial economy satisfies the "for cause shown" standard. *Enviro–Scope*, 57 B.R. at 1008–1009. In *Enviro–Scope* the court withdrew reference to the bankruptcy court of a core proceeding because a related case was pending in the district court and failure to withdraw the reference would have forced the defendants to litigate many of the same issues in two separate forums. In *In re Leedy Mortgage Co.*, 62 B.R. 303, 306 (E.D.Pa.

1986) the court withdrew the reference because it was anticipated that the trial would be lengthy, complex, involve extensive discovery and expert testimony, and turn on questions of out-of-state law.

The case at hand exhibits none of the aspects cited by the *Enviro–Scope* and *Leedy Mortgage* courts as satisfying the "for cause shown" standard. Indeed, the situation in this case is similar to that in *Ramex International*, 91 B.R. at 315, wherein the court declined to withdraw the reference of a non-core proceeding because its resolution rested primarily on interpretation of an insurance policy and was unlikely to require a jury trial.[5]

Accordingly, the court finds that sufficient cause has not been shown to justify the withdrawal of the reference of this core proceeding to the Bankruptcy Court.

For these reasons, defendant's motion to withdraw the reference to the Bankruptcy Court will be denied.

■

---

**5.** In the case at hand, Valley Forge's claim that the non-renewal notice did not comply with the requirements of the insurance contract and the Insurance Companies' claim that Valley Forge does not have standing to sue under the contract involve interpretations of the insurance contract.