In re NATIONAL CENTURY FINAN-
CIAL ENTERPRISES, an Ohio
corporation, et al., Debtors.

National Century Financial
Enterprises, Inc., et al.,
Plaintiffs,

v.

Gulf Insurance Company,
et al., Defendants.

Bankruptcy No. 02–65235.
Adversary No. 03–02288.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

July 23, 2004.

Michael H. Carpenter, Columbus, OH, Brian E. Dickerson, Columbus, OH, John E. Haller, Columbus, OH, David A. Ison, Powell, OH, Michelle L. Kopf, Chicago, IL, David G. Korn, Columbus, OH, Thomas A. Labuda, Jr., Chicago, IL, Albert J. Lucas, Columbus, OH, William A. Miller, Phoenix, AZ, Grady L. Pettigrew, Jr., Cox Stein & Pettigrew Co LPA, Columbus, OH, Peter A. Rosato, Columbus, OH, Michael L. Scheier, Cincinnati, OH, Karl H. Schneider, Columbus, OH, J. Ronald Trost, New York, NY, Jane Lee Vris, New York, NY, Benjamin S. Zacks, Columbus, OH, Defendants.

Mary E. Tait, Jones Day, Columbus, OH, Kasey T. Ingram, Columbus, OH, for Plaintiffs.

*ORDER ON COMBINED MOTION AND MEMORANDUM IN SUPPORT OF DEFENDANT GREAT AMERICAN INSURANCE COMPANY FOR EXPEDITED HEARING ON MOTION FOR DETERMINATION OF CORE/ NON–CORE STATUS OF CLAIMS AND COUNTERCLAIMS AND PLAINTIFF'S BRIEF IN OPPOSITION*

DONALD E. CALHOUN, JR., Bankruptcy Judge.

This case presents the question whether claims and counterclaims made in this adversary proceeding regarding Great American Insurance Company's ("Great American") excess D & O policy are core or non-core matters. In accordance with our analysis of the case law as set forth hereinafter, we determine that the matter could exist outside of the bankruptcy context and the determination of the claims and counterclaims do not invoke a substantive right created by federal bankruptcy law. Thus, we hold that the claims and counterclaims are non-core matters.

Prior to its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 18, 2002, National Century Financial Enterprises ("NCFE") entered into two separate directors and officers insurance policies ("D & O Policies" or "D & O Policy"). The primary policy with Gulf Insurance Company ("Gulf") provided D & O coverage in the amount of $5 million. The second excess policy, with Great American, provided coverage for $5 million upon the exhaustion of the Gulf insurance policy. Both policies were purchased on or about March 28, 2002, with the policy period to run between March 28, 2002 and March 28, 2003. Pursuant to both policies, at the expiration of the policy period, NCFE had the option to an extended discovery period for one year to bring claims that arose during the original policy period. NCFE exercised this option and purchased from both insurers the additional one-year extended discovery period.

On September 17, 2003, NCFE filed its Second Amended Complaint for Declaratory and Injunctive Relief seeking:

    a.  a declaration that the insurance policies are not void as to the NCFE Entities on the basis of misstatements in the applications;

    b.  for a declaration of a fair and equitable procedure for determining allocation of policy proceeds to all claimants.

c. for a declaration of the proportional share of each claimant to the policy proceeds;

d. for an injunction enjoining Gulf Insurance and Great American from making any disbursements from the Policy proceeds other than in conformance with a determination by the court.

Great American then submitted its answers to NCFE's Second Amended Complaint. In addition, Great American asserted counterclaims seeking rescission of the D & O Policy, or, in the alternative, declaratory judgment that the D & O Policy is null and void due to fraud and misrepresentations. Subsequently, Great American filed a motion with the District Court to withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d).

The District Court, by Order of Chief Judge Graham, noted the sharp disagreement between the parties as to whether the claims and counterclaims with respect to the Great American excess policy ("Excess Policy") were core or non-core issues. The District Court held that the initial determination whether a proceeding is core or non-core should be made by the Bankruptcy Court and not the District Court. The District Court then concluded that Great American's motion to withdraw reference was premature, and thereby denied the motion to withdraw without prejudice. Accordingly, the determination of whether the claims and cross-claims regarding the D & O policy are core or non-core matters is now before this Court.

This Court held a hearing on this issue on April 8, 2004. During arguments, NCFE asserted for the first time that the insurance contracts were post-petition agreements, due to the purchase of the extended discovery period on March 28, 2003. This Court then asked the parties to file stipulated facts and briefs regarding NCFE's exercise of the extended discovery period. Both parties have complied with the Court's requests. In addition, Gulf Insurance has since submitted to the jurisdiction of the Bankruptcy Court by filing a motion to interplead its funds under the primary insurance policy.

## DEFENDANT'S ARGUMENT

Great American, in its pre-hearing motion, stated that the claims and counterclaims are non-core matters. Great American argues that the matter is governed by state law and does not invoke any substantive rights created by bankruptcy law. Likewise, Great American contends that NCFE's position, namely that the dispute is core under §§ 157(b)(2)(A) and 157(b)(2)(O), would lead to an unconstitutional expansion of the Bankruptcy Court's jurisdiction, contrary to *Northern Pipeline v. Marathon,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

One of the principal cases cited by Great American for determining whether a proceeding or claim is core or non-core is *Michigan Employment Security Commission v. Wolverine Radio Co. (In re Wolverine Radio),* 930 F.2d 1132 (6th Cir.1991). In *Wolverine Radio,* the Sixth Circuit Court of Appeals painstakingly articulated, in a step-by-step process, how the federal district courts and the bankruptcy courts, constitutionally and statutorily, establish jurisdiction over particular matters. Of particular relevance to the case *sub judice,* the court noted that § 157(b)(1) "vests full judicial power in bankruptcy courts over 'core' proceedings arising *under title 11, or arising in a case under title 11." Wolverine Radio,* 930 F.2d at 1144 (emphasis in original). The court also notes that "arising under title 11" "describes those proceedings that involve a cause of action created or determined by a statutory pro-

vision of title 11" and "arising in" "proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Id.* (internal citations omitted). Citing to *Wolverine Radio,* Great American notes, if the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy, then it is not a core proceeding.

Great American also cites to *G–I Holdings v. Reliance Insurance, et al., (In re G–I Holdings)* 278 B.R. 725 (Bankr.D.N.J. 2002). The debtors in *G–I Holdings,* much like NCFE, claimed that the coverage action was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). *Id.* at 729. In determining that the coverage action was not a core matter, the bankruptcy court first determined that the action did not fall under any of the enumerated situations listed in § 157(b)(2). Noting that the enumerated proceedings listed in § 157(b)(2) were nonexclusive, the court examined whether the proceeding was core because it either "invoked a substantive right provided by title 11 or by its nature, could arise only in the context of a bankruptcy case." *Id.* at 735.

The *G–I Holdings* court found that the coverage action does not assert a right provided by Title 11, stating "the right to performance on an insurance agreement is grounded in state contract law." *Id.* Similarly, the court stated "it cannot be said that the nature of this action could arise only in the context of a bankruptcy case. The existence of the coverage action was not dependent on the underlying bankruptcy case." *Id.* As evidence that the action could exist outside of bankruptcy, the court pointed out that the debtor had commenced the coverage action in state court prior to filing the bankruptcy petition.

In addition to *Wolverine Radio* and *G–I Holdings,* Great American cites other cases that declare insurance coverage issues are non-core. Each of the additional cases cited by Great American found that insurance coverage actions do not invoke a right created by bankruptcy law and could exist outside of bankruptcy. The only cited case that warrants greater attention is *In re U.S. Brass Corp.,* 110 F.3d 1261 (7th Cir.1997). In *U.S. Brass Corp.,* Judge Posner succinctly stated that "[the plaintiff's] claimed right to insurance coverage is a creation of state contract law and one that could be vindicated in an ordinary breach of contract suit if [the plaintiff] were not bankrupt. The fact that it is an important right to the bankrupt-[plaintiff] claims to be seeking $500 million in insurance coverage-is irrelevant." *Id.* at 1268–69.

Great American also argues that NCFE's position, that the dispute is a core proceeding under § 157(b)(2)(A) and (O), would dramatically expand bankruptcy court jurisdiction in a manner that is not constitutionally permitted. Great American relies on *In re Orion Pictures Corp.,* 4 F.3d 1095 (2nd Cir.1993), to refute the notion that the insurance proceeds concern the administration of the estate and is therefore core. In *Orion Pictures Corp.,* the Second Circuit reviewed a lower court decision that found a $77 million breach of contract claim to be core because it related to the administration and liquidation of the estate, as these funds would be available to creditors. The Second Circuit disagreed with the lower court, finding that "the problem with [that] approach is that it creates an exception to *Marathon* that would swallow the rule." *Id.* at 1102. As Great American notes, the Second Circuit found that "any contract action that the debtor would pursue against a defendant presumably would be expected to inure

benefit of the debtor estate and thus [concern] its administration," and thus defining the action as core would "wipe out the underpinnings of *Marathon.*" *Id.* (internal citations omitted).

## POST PETITION EXTENSION OF THE EXCESS POLICY

With respect to the post-petition extension of the Excess Policy, which allowed for an additional year of the discovery period, Great American relies on *State ex rel. Preston v. Ferguson,* 170 Ohio St. 450, 166 N.E.2d 365 (1960) to establish that an "extension" of an existing contract does not create an original contract, but rather relates to rights and obligations under the original agreement. As articulated in that case, the Ohio Supreme Court distinguished between "renewal" and "extension" options in contracts to determine the constitutionality of a new state statute. The Ohio Supreme Court found that a contract containing an option for renewal has the effect of granting a new right to execute a new contract upon the exercise of the option, and the new contract is operative immediately after the terminal date of the original contract. Whereas, a contract with an option to extend an agreement operates to extend the terms of the original agreement and the contract then becomes the one for both the original and extended term. *Id.* at 471, 166 N.E.2d 365.

Great American then cites to another Ohio case that applied the rationale of *Ferguson* to an original contract that used "extend" language, finding that the original contract remained in force continuously through a series of successive one-year extensions. *City of Xenia v. State,* 140 Ohio App.3d 65, 746 N.E.2d 666 (2000). Also cited is a Sixth Circuit case, *American Casualty Co. of Reading v. Federal Deposit Ins. Corp.,* 39 F.3d 633 (6th Cir. 1994), which states *in dicta* that exercising a discovery period option was to extend the coverage offered under the original contract and did not create a new contractual agreement.

Applying the *Ferguson* language to the facts at bar, defendant then argues that the plain language of the pre-petition Excess Policy, as well as other documents created by the debtors, uses the term "extension." The defendant states this language makes it clear that the plaintiffs understood that a new agreement was not created and the original contract remained in force, albeit the discovery period extended for an additional year. Accordingly, Great American argues that a post-petition contract was not formed between the parties.

## NCFE'S ARGUMENT

NCFE argues that the claims and counter-claims are core because they involve the administration of the debtors' estates and implicate the ultimate liquidation and disposition of the Debtors' assets. Likewise, NCFE contends this matter fails to meet all of the characteristics of a non-core matter as outlined in *In re Hughes–Bechtol,* 141 B.R. 946, (Bankr.S.D.Ohio 1992).

In *Hughes–Bechtol,* the bankruptcy court held that a non-core proceeding is identified by the following characteristics:

vi. the underlying cause of action is not specifically identified as a core proceeding under § 157(b)(2)(B) through (N);

vii. it existed prior to the filing of the bankruptcy case;

viii. it would continue to exist independent of the provisions of Title 11; and

ix. it is a proceeding in which the parties' rights, obligations, or both are not significantly affected as a result of the filing of the bankruptcy case.

*Id.* at 948–949. *Hughes–Bechtol* stated, "[s]ince Congress intended to interpret core proceedings broadly, those proceedings which *do not contain all the characteristics of a non-core proceeding* will be determined to be core." *Id.* (emphasis added).

NCFE contends that the proceeding at bar fails to satisfy most of the four requirements outlined in *Hughes–Bechtol.* As to the first requirement, NCFE claims that the proceeding plainly falls within the non-exclusive list of types of core proceedings-specifically the complaint and counterclaims are matters concerning the administration of the estate under § 157(b)(2)(A). NCFE also argues that Great American, while casting its counterclaim in terms of state contract law, fundamentally seeks a determination regarding the validity of a significant potential asset of the Debtors' estates. Thus, the proceeding also affects the liquidation of the assets of the estate under § 157(b)(2)(O).

NCFE next argues that the issue fails to meet the third characteristic of a non-core matter announced in *Hughes–Bechtol,* namely that the cause of action would continue to exist independent of the provision of Title 11. According to NCFE, Great American's counterclaim for rescission relates directly to the assets that will ultimately be available for distribution to creditors of the debtors. Likewise, NCFE asserts that the question whether particular assets are property of a debtor's estate, and thus available to creditors, is an issue that could only arise in the bankruptcy context.

Another argument raised by NCFE is that courts have recognized that litigation over the validity of an insurance policy, and whether the policy is part of the debtor's estate, is a core proceeding. The only case cited by NCFE for this assertion is *Valley Forge Plaza Assoc. v. Fireman's Fund Ins.,* 107 B.R. 514 (E.D.Pa.1989). In *Valley Forge,* debtor alleged that defendant insurance company breached an insurance policy contract and sought a declaratory judgment that the insurance policy remained in effect. The insurance contract at issue provided general liability and liquor liability insurance to the insureds.

The *Valley Forge* court noted that the contract claim in *Marathon Pipe Line* was based on a pre-petition cause of action, and that the Supreme Court holding does not apply to post-petition causes of action. *Id.* at 517. Relying heavily on the reasoning found in *In re Arnold Print Works,* 815 F.2d 165 (1st Cir.1987) (involving a post-petition cause of action for an account receivable), the *Valley Forge* court concluded that post petition-petition breach of contract claims—such as the declaratory judgment, injunction, and damage claims— are not "traditional" contract claims which are exclusively reserved for adjudication in Article III courts. *Valley Forge* 107 B.R. at 517. Likewise, the *Valley Forge* court held that preservation of an insurance contract is a matter concerning the administration of the estate within the meaning of § 157(b)(2)(A). Accordingly, the plaintiff's complaint was found to be a core proceeding.

## POST PETITION EXTENSION OF THE EXCESS POLICY

NCFE argues that by choosing to accept the post-petition payment for the extended discovery payment, Great American knowingly and voluntarily accepted a post-petition contractual obligation to the debtors. NCFE finds it persuasive that the extended discovery period was purchased post-petition, Great American availed itself of the right to provide additional notice post-petition, and their threat of anticipatory repudiation of the contract was post-petition. Instead of choosing to

refuse payment for the discovery period and declare the policies void due to fraud, Great American accepted the payments of the debtors-in-possession.

Citing to *Hughes–Bechtol, Inc.,* 141 B.R. at 949, NCFE argues "when a proceeding is in part a core proceeding and in part non-core, the courts may determine that the entire proceeding is core if the core aspect heavily predominates and the non-core aspect is insignificant." According to NCFE, the request for relief concerning the administration and liquidation of the assets of debtors' estates predominate.

NCFE also argues that the matter is core because it relates to a post-petition breach of a post-petition contractual obligation that the insurers entered into with the debtors, as officers of the court. NCFE cites extensively from the "seminal" case of *In re Arnold Print Works, Inc.* 815 F.2d 165 (1st Cir.1987), which held that contractual obligations entered into with a debtor-in-possession were not "traditional contract actions" under *Marathon.* Also cited from that case is language that actions arising out of a contract with officers of the court are treated as contracts with the bankruptcy court itself: "[w]ith respect to contracts made by trustees, debtors-in-possession and other officers of the bankruptcy court, the necessity of the court retaining exclusive jurisdiction over matters arising out of such contracts is even more pronounced than in the case of other matters arising during the administration of the estate." *Id.*

## ANALYSIS

█ With the foregoing arguments in mind, this Court must determine whether the claims and counterclaims of the parties constitute a core or non-core proceeding. At least one court has noted that attempting to draw a distinction between core and non-core proceedings is, at times, a "Sisyphean" task. *In re United Security & Communications,* 93 B.R. 945, 954 (Bankr. S.D.Ohio 1988) (internal citations omitted). Determining what constitutes a "core" proceeding is an elusive task for several reasons: the term "core" has not been defined by Congress, it is not limited to the enumerated list in 28 U.S.C. § 157(b)(2), and frankly, there is very little uniformity or agreement within the case law itself. *Id.*

NCFE directs this Court to *Hughes–Bechtol,* 141 B.R. 946 (Bankr.S.D.Ohio 1992) to identify the four requisite characteristics of a non-core proceeding. The first characteristic according to *Hughes–Bechtol* of a non-core proceeding is that the underlying causes of actions are not specifically identified under § 157(b)(2)(B) through (N). According to NCFE this matter falls under § 157(b)(2)(A) and (O). However, NCFE fails to demonstrate that this matter falls *within* the provisions of § 157(b)(2)(B) through (N). Clearly, provisions (A) and (O) of § 157(b)(2) do not. Accordingly, the first characteristic of a non-core matter is met.

With respect to the third characteristic, that the cause of action would continue to exist independent of the provisions of Title 11, NCFE argues that the matter relates directly to the assets that may be ultimately available to creditors. Moreover, NCFE contends that the determination whether particular assets are property of a debtor's estate is an issue that could arise only in the bankruptcy context. Despite NCFE's characterization of the proceedings, a more accurate description is that it involves a claimed right to insurance coverage and allocation created by state contract law and one that could be vindicated by in an ordinary breach of contract suit if NCFE was not bankrupt. *See U.S. Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir.1997). The existence of the coverage and allocation action is not dependent on the under-

lying bankruptcy case. *G–I Holdings*, 278 B.R. 725, 735 (Bankr.D.N.J.2002). Here, the Bankruptcy Code itself is not the source of the claimants right or remedy, but just the procedural vehicle for the assertion of a right conferred by state law. *U.S. Brass Corp.*, 110 F.3d at 1268.

The fourth characteristic of the *Hughes–Bechtol* test, which essentially states that non-core proceedings do not significantly affect the litigants' rights and obligations as a result of the filing of the bankruptcy case, is also met in this case. Since the filing of the bankruptcy cases, there has been no indication that either of the parties' rights and/or obligations under the Excess Policy have been affected as a result of the bankruptcy filing. To date, NCFE has made no claim to the contrary. Accordingly, the fourth characteristic of a non-core matter under *Hughes–Bechtol* is met.

■ The second characteristic under *Hughes–Bechtol* of a non-core proceeding is that the cause of action existed prior to the filing of the bankruptcy case. In this case, it is unclear whether a cause of action under the Excess Policy existed prior to filing of the bankruptcy case by NCFE. However, even if there was no cause of action until after the petition was filed, this Court still believes the matter to be non-core. In *In re The Babcock & Wilcox Co.*, 2001 WL 1018366, *5 (E.D.La. July 2, 2001) (internal citations omitted) the court found that a "dispute arising from a pre-petition contract will usually not be rendered core simply because the cause of action could only arise post-petition." Accordingly, the court declined the debtor's invitation to find post-petition breach of contract claim a core proceeding. The court in *In re G. Weeks Securities*, 89 B.R. 697, 708 (Bankr.W.D.Tenn.1988) found that "all causes of action arising *during* the chapter 11 case do not of necessity become core." Under the *Hughes–Bechtol* criteria, it does not appear that the issues presented in this case are core.

Substantially similar analysis to that articulated in *Hughes–Bechtol*, is found in *Michigan Employment Security Commission v. Wolverine Radio, Co.*, 930 F.2d 1132 (6th Cir.1991). In *Wolverine Radio*, the Sixth Circuit stated that "the court must look at both the form and the substance of the proceeding to determine whether core status exists." *Id.* at 1144. If the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy, then it is not a core proceeding.[1] The court further noted that "§ 157(b)(1) vests full judicial power in bankruptcy courts over 'core' proceedings arising *under title 11, or arising in a case under title 11.*" *Id.* at 1144 (emphasis in original). The cause of action *sub judice* does not involve a proceeding created or determined by a statutory provision of Title 11, nor is it a proceeding that by its very nature could arise only in a bankruptcy case. *Id.; See also In re BN1 Telecommunications*, 246 B.R. 845, 849 (6th Cir. BAP 2000) (holding that cause of action was not core because it is not one arising under Title 11, or arising in a case under Title 11); *In re Elder–Beerman Stores, Corp.*, 1997 WL 1774875 *4 (S.D.Ohio Aug.1, 1997) (a core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not

---

1. The Third Circuit has adopted a similar approach whereby the court first looks to the non-exhaustive list of core proceedings enumerated in § 157(b), and then the court must examine whether the proceeding in question either invokes a substantive right provided by Title 11 or by its nature could arise only in the context of bankruptcy cases. *See In re G–I Holdings*, 278 B.R. at 734.

exist outside of the bankruptcy.) (internal citations omitted).

NCFE also asserts that the claim and counterclaims are core matters because they concern the administration of the estate under § 157(b)(1)(2)(A) and affect the liquidation of the assets of the estate under § 157(b)(1)(2)(O). Several courts, however, have flatly rejected this argument finding that the "better reasoned view is that state law contract-type actions... which literally fall within the broad catchall language of 28 U.S.C. § 157(b)(1)(2)(A) and (O), are non-core, 'related' proceedings." *In re United Security & Communications. Inc.*, 93 B.R. 945, 957 (Bankr.S.D.Ohio 1988) (internal citations omitted).

In *United Security & Communications, Inc.*, the debtor-in-possession, United, filed an adversary proceeding against Rite Aid, seeking recovery of monetary damages, interest, and attorney fees for alleged breach of lease agreements involving burglar alarm systems. Rite Aid answered the complaint denying United's allegations and counter-claimed that United breached the aforementioned leases by, *inter alia,* failing to maintain the burglar alarm systems in good working order. *Id.* at 946–47. United argued that the adversary proceeding was a core matter under 157(b)(2)(A) and (O) because its ability to fund a plan of reorganization hinged on successful litigation of the instant action to collect an account receivable allegedly owed by Rite Aid. Moreover, United stated that "the prompt resolution of this accounts receivable action in a specialized court, adjunct court is vital to estate administration." *Id.* at 957. While noting that successful resolution of traditional contract action will have a "salutary impact" upon the estate is an "oft-cited rationale," the bankruptcy court found the logic unconvincing. *Id.*

Relying heavily on *Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155 (Bankr. E.D.N.Y.1986), the *United Security & Communications, Inc.* court found that "if the reasoning of cases which broadly construe core proceeding were accepted [under 157(b)(2)(A) and (O)], then the Marathon lawsuit would constitute a core proceeding, and the Bankruptcy Amendment and Federal Judgeship Act of 1984 would suffer the same constitutional infirmity condemned by the *Marathon* Court." *Id.* (internal citations omitted). Moreover, the *United Security & Communications, Inc.* court accepted the *Acolyte* finding that the clear weight of authority establishes that the catchall provision of § 157(b)(2)(A) and (O) must be construed in a manner that does not derogate the constitutional principles which emanated from *Marathon. Id.* at 958. Accordingly, the adversary proceeding between United and Rite Aid was found not to be a core proceeding under 157(b)(2)(A) and (O). *See also In re Nationwide,* 130 B.R. 768 (Bankr.S.D.Ohio 1991) ("there are limits to the wide-sweeping language of subsections (A) and (O). The catchall provisions of section 157(b)(2)(A) and (O) must be construed in a manner consistent with the constitutional principles set forth in *Marathon.*"); *In re GF Corp.,* 127 B.R. 384 (Bankr. N.D.Ohio 1991) ("[T]his court concurs with the *United Security & Communications* and *Acolyte* courts that the better approach is to interpret 157(b)(2)(A) and (O) in a restrictive fashion").

The Second Circuit also rejected the argument that a pre-petition contract claim was core under § 157(b)(2)(A) and (O). *In re Orion Pictures Corp.,* 4 F.3d 1095 (2nd Cir.1993). The Second Circuit found that the district court erred in holding that a $77 million breach of contract claim was core because a "sum that large

could do nothing but affect the administration and liquidation of the estate." *Id.* at 1102. The Second Circuit rejected this reasoning because "that approach creates an exception to *Marathon* that would swallow the rule. Any contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus concerns its administration." *Id.*

There are, of course, situations where a cause of action falls within the "catchall" provisions of § 157(b)(2)(A) and (O). For example, in *In re Arnold Print Works, Inc.*, the First Circuit found a cause of action for a post-petition account receivable to be a core proceeding. In the underlying bankruptcy, the debtor filed for bankruptcy and subsequently entered into a contract to sell copper rollers that subsequently turned out not to be pure copper. The purchaser of the rollers refused to pay the balance of the invoice and debtors sued for the balance in bankruptcy court. The First Circuit, overruling the lower court, found the matter to be core because it involved a debtor in possession collecting a post-petition debt arising from the sale of estate assets, thereby falling within the literal language of section 157(b)(2)(O). *Id.* at 168. This is different from the case *sub judice* because the facts of *Arnold Print Works* establish a clear and direct nexus between the cause of action and the language of subsection (O). There is little doubt that resolution of NCFE's claims and Great American's counterclaims may be related to liquidation of the assets of the estate, but the nexus in and of itself is insufficient to warrant classifying the matter as a core proceeding.

Likewise, in *In re Heaven Sent. Ltd.*, 50 B.R. 636 (Bankr.E.D.Pa.1985) the bankruptcy court found that a dispute over a post-petition cargo insurance policy was a core proceeding because it involved matters concerning the administration of the estate under § 157(b)(2)(A). As a cargo carrier, licensed by the Interstate Commerce Commission, debtor Heaven Sent was required to maintain insurance, which was fulfilled by a policy from Centennial Insurance. *Id.* at 637. Centennial thereafter notified the debtor that it was canceling the policy prior to the end of the insured period. After the debtor filed a complaint and a motion for a temporary restraining order, Centennial consented to an order barring cancellation of the insurance policy prior to the insured period. Debtor nonetheless moved for a trial on the issue of compensatory and punitive damages. *Id.* at 638. The bankruptcy court held that it had jurisdiction over the matter because it was a core proceeding under § 157(b)(2)(A). The court found that the preservation of the insurance coverage was *directly* related to the administration of the estate. *Id.* (emphasis added).

■ Again, the facts of *Heaven Sent* are distinguishable from those *sub judice*. In *Heaven Sent*, the insurance policy was necessary for the debtor's successful reorganization because, as a cargo carrier, Heaven Sent was mandated to maintain insurance by the Interstate Commerce Commission. Likewise, Centennial Insurance made the contract with the debtor post-petition and allegedly knew that the insurance was necessary for the debtor's successful reorganization. NCFE has yet to articulate how the D & O Policy issued by Great American is a necessity or an integral part to its successful reorganization. The D & O Policy would certainly augment the assets of the estate for general distribution, but the effect on the administration of the estate is still insufficient to render the proceeding core. *See In re U.S. Lines, Inc.*, 197 F.3d 631, 638 (2nd Cir.1999) (citing *In re Orion Pictures*).

NCFE's reliance on *Valley Forge Plaza v. Fireman's Fund,* 107 B.R. 514 (E.D.Pa. 1989) is similarly unpersuasive. *Valley Forge* relies principally upon *Arnold Print Works* and *Heaven Sent* for the very broad proposition that preservation of an insurance contract is a matter concerning the administration of the estate within the meaning of § 157(b)(2)(A). Unlike *Valley Forge,* however, the post-petition contracts in both *Arnold Print Works* and *Heaven Sent* were more directly related to the matters concerning the administration of the estate and/or the liquidation of assets. Similarly, the court itself in *Valley Forge* acknowledged that "it is arguable that in some of these cases, [finding post-petition causes of actions are within the meaning of § 157(b)(2)(A)], the causes of action *may have been more intimately related* to the administration of the estate than in the case at hand." *Id.* at 517 (emphasis added). This Court declines to follow *Valley Forge* because the broad proposition for which it stands is divorced from the facts of the cases for which it relies upon.

NCFE correctly notes that several courts have consistently held that a proceeding is core where the there is a close nexus between the claim asserted in the adversary proceeding and the bankruptcy itself. While NCFE does not articulate the close nexus between the D & O Policy claims/counterclaims to the bankruptcy, cases in other circuits have clearly articulated the nexus between insurance contracts and the bankruptcy. In *In re Northwestern Institute of Psychiatry. Inc.,* 268 B.R. 79 (Bankr.E.D.Pa.2001) the debtor owned and operated a psychiatric hospital that sustained flood damage to its premises. Debtor brought suit against its insurer, who previously issued the policy post-petition, seeking declaratory judgment that the policy covered the damage. In holding that the matter was core, the court determined that the contract was

integral to the reorganization case that gave it its core character. *Id.* at 89. "The recovery of the insurance policy was necessary to restore the debtor's hospital to full capacity to facilitate raising reorganization financing and to perform its presented court-approved stipulations with its labor unions." *Id.*

As Great American notes, many insurance coverage disputes held to be core involved matters within the mass tort context that had a direct nexus to the bankruptcy proceeding itself. In *G–I Holdings, Inc.,* 278 B.R. 725, 736–37 (Bankr. D.N.J.2002), the bankruptcy court discussed two asbestos cases that held the insurance coverage actions were core proceedings. In the first case, the insurance coverage action was a core proceeding specifically because it was the "linchpin" of the reorganization effort. *Id.* The funding of the reorganization was to be provided by the proceeds of the policy and the claimants for asbestos-related injury were the direct beneficiaries of the policy.

In the second mass-tort case noted in *G–I Holdings,* several thousand asbestos-related injury claims were filed against the debtor. A declaratory judgment proceeding was initiated by the trustee in bankruptcy to resolve issues concerning coverage and indemnification under insurance policies for the injury claims. The determination of coverage under the insurance policies and the operation of specific provisions were found to be essential and inextricably tied to the administration of the case. *Id.* After differentiating the mass-tort cases from the D & O insurance policy, the *G–I Holdings* court found that "while the proceeds of the D & O policy are surely important, the debtor has not shown any basis for characterizing them as the linchpin of or as essential to the effort to reorganize." *Id.* at 737.

Similar to the debtor in *G–I Holdings,* NCFE has not shown that the D & O

policy is the linchpin or integral to the reorganization effort. Rather, NCFE has couched its argument under § 157(b)(2)(A) and (O) in terms such as: the matter "relates directly to the assets that will *ultimately* be available for distribution to creditors of the Debtor's," or "implicat[es] the *ultimate* liquidation and disposition of Debtor's assets." However, the invocations of "implications" and "relationships" by themselves do not make a demonstrable nexus between the claims/counterclaims involving the D & O Policy and the bankruptcy that warrants classifying the matter as core.

Turning to the issue of the post-petition extension of the discovery period, NCFE relies on *In re Arnold Print Works, Inc.,* 815 F.2d 165 (1st Cir.1987) for the assertion that a post-petition contract entered into with a debtor-in-possession is a core proceeding. In *Arnold Print Works,* as discussed more generally *supra,* the debtor filed for bankruptcy and subsequently entered into a contract to sell copper rollers that were later determined not to be pure copper. The purchaser of the rollers refused to pay the balance of the invoice and debtors sued for the balance in bankruptcy court. The First Circuit found the matter to be core because it involved a debtor-in-possession collecting a post-petition debt arising from the sale of estate assets, thereby falling within the literal language of section 157(b)(2)(O). *Id.* at 168.

█ NCFE's reliance on *Arnold Print Works* is unpersuasive because the case is readily distinguishable from the facts *sub judice.* Foremost, Great American and NCFE did not enter into a new contract post-petition. As *State ex rel. Preston v. Ferguson,* 170 Ohio St. 450, 166 N.E.2d 365 (1965) makes clear, an option to extend a term of the original agreement does not create a new contract, but rather extends

the original agreement to cover the extended term. NCFE cites no authority to the contrary. The second difference is that the claim in *Arnold* arose from a post-petition contract by the debtor in an effort to liquidate its estate assets. Therefore, the proceeding fell within the literal language of § 157(b)(2)(O). This is not the case with NCFE, which opines that the D & O policy may ultimately implicate liquidation of its assets. Lastly, and as emphasized in the *Arnold Print Works* opinion, the third party purchasing the rollers was fully aware of the debtor's bankruptcy status at the initiation of their contractual relationship. Whereas, at the initiation of the contract agreement in the facts at bar, NCFE had not filed bankruptcy.

In the Court's opinion, it is clear that this matter does not invoke a substantive right created by federal bankruptcy law and the matter could exist outside of the bankruptcy context. Further, while resolution of the D & O policy may fall within the broad language of 28 U.S.C. § 157(b)(1)(2)(A) and (O), the Court agrees that the better reasoned view is that a state law contract action, such as the one at bar, is non-core. Similarly, NCFE has not demonstrated to the Court's satisfaction a close nexus between the claims/counterclaims and the bankruptcy itself which warrants a finding that the matter is core. Finally, because the post-petition extension of the discovery period did not create a new contractual agreement between the parties, the Court finds that the claims and counterclaims regarding the Great American Excess D & O Policy are non-core matters. Accordingly, this Court determines that the issues involved in this case are non-core.

IT IS SO ORDERED.